IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

KEITH WASHINGTON, *et ux.*,             *

   Plaintiffs                              *

  v.                                              *          Civil Action No. 20-1932-DLB

GLOBAL TEL*LINK CORP., *et al.*,        *

   Defendants                             *

 * * * * * * * * * * * *

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS OR,
## <u>IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>

Defendants, Global Tel*Link Corporation ("GTL"), Garth Johnson, and Nancy Parkhurst (collectively, "these Defendants"), by their respective undersigned counsel, have moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6) because Plaintiffs have failed to state claims upon which relief can be granted. Alternatively, these Defendants have moved for summary judgment under Fed. R. Civ. P. 56 because the undisputed material facts demonstrate that these Defendants are entitled to judgment as a matter of law.

### I. <u>The Complaint</u>

Plaintiffs filed a 26-page, 175-paragraph Complaint (ECF 7) alleging, in essence, that Defendants unlawfully listened to their private telephone conversations and thereafter retaliated against them. GTL is a private company that provides telephone services to inmates at the Eastern Correctional Institution ("ECI") in Westover, Maryland. ECF 7

(Complaint) at ¶¶ 4, 22. The Complaint identifies Defendant Garth Johnson as GTL's Senior Vice President of Operations (*id.*) and Defendant Nancy Parkhurst as a GTL employee at ECI. *Id.* at ¶ 22. Although not specifically alleged, a fair inference from the Complaint is that Plaintiff Keith A. Washington was an inmate at ECI at the times relevant to the Complaint and Plaintiff Stacey Washington is his wife. *See id.* at ¶¶ 6, 22, 24-33.

Plaintiffs claim that on June 30, 2017, Ms. Parkhurst "allowed Correctional Officer Richards" "to listen to Plaintiff(s) [*sic*] private phone conversation." *Id.* at ¶ 24. Thereafter, according to Plaintiffs, "C/O Richards approached Plaintiff and stated that she and Defendant Parkhurst had listened to Plaintiffs [*sic*] private phone conversations and further stated that she and Defendant Parkhurst had heard Plaintiff and his wife (Co-Plaintiff) call her and Parkhurst a 'bitch' while talking on the phone." *Id.* at ¶ 28. According to the Complaint, the correctional officer then stated, "You don't know, but I'll get ya." *Id.* at ¶ 29. The correctional officer allegedly "had Defendant Parkhurst cut off Plaintiffs [*sic*] phone account" (*id.* at ¶ 30) and subsequently threatened to have Plaintiff "transferred to another Prison." *Id.* at ¶ 32. Plaintiffs further allege that on July 31, 2017, Ms. Parkhurst, having "heard that the Plaintiff(s) had filed a complaint [against her] within D.O.C." (*id.* at ¶ 37), "came into Housing Unit 5 looking for the Plaintiff and threaten[ed] to have him 'Locked up in isolation' and 'Permanently removing his phone priviledges [*sic*]' if he ever filed a complaint on her again" (*id.* at ¶ 39), and stated that she would "have the [Captain] write you a ticket today." *Id.* at 40.

Based on these core allegations, Plaintiffs assert claims against GTL, Mr. Johnson, Ms. Parkhurst (and 12 other unserved defendants) for: 1) civil conspiracy; 2) common law

2

negligence; 3) gross negligence; 4) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 *et seq.*; 5) breach of contract; 6) intrusion upon seclusion; 7) negligent hiring and retention; 8) vicarious liability; 9) negligent entrustment; 10) assault; 11) intentional infliction of emotional distress; 12) fraud; and 13) violation of Maryland's constitution. All of these claims should be dismissed or, in the alternative, these Defendants are entitled to summary judgment in their favor on all of Plaintiffs' claims.

## II.   <u>Applicable Legal Standards</u>

*Rule 12(b)(6)*

A Rule 12(b)(6) motion challenges "the legal sufficiency of a complaint" on the grounds that, "even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law 'to state a claim upon which relief can be granted.'" *Thomas-Lawson v. Koons Ford of Balt., Inc.*, No. SAG-19-3031, 2020 WL 1675990, at *2 (D. Md. Apr. 6, 2020) (citing *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017)); *see* Fed. R. Civ. P. 12(b)(6). A complaint is sufficient if it "contain[s] 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Cooke v. Caliber Home Loans, Inc.*, No. PWG-18-3701, 2020 WL 1434105, at *3 (D. Md. Mar. 24, 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When resolving a motion to dismiss, the Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). If, however, an affirmative defense such as the statute of limitations "'clearly appears on the face of the complaint,' ... the Court may rule on that defense when considering a motion to dismiss." *Skibicki v. Fairmont*

3

*Plaza*, No. PWG-17-1366, 2018 WL 3862252, at *2 (D. Md. Aug. 14, 2018) (quoting *Kalos v. Centennial Sur. Assocs.*, No. CCB-12-1532, 2012 WL 6210117, at *2 (D. Md. Dec. 12, 2012)); *see Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

The Supreme Court refined the Rule 12(b)(6) inquiry in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In *Twombly*, Court held that to withstand a motion to dismiss, a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." 550 U.S. at 570. Under the plausibility standard, while a complaint need not contain "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. In other words, the legal framework of the complaint must be supported by factual allegations that "raise a right to relief above the speculative level." *Id.*

In *Iqbal*, the Court expanded upon *Twombly* by prescribing the analytical approach to be followed in any Rule 12(b)(6) test to the sufficiency of a complaint. First, reviewing courts are instructed to identify and segregate out the legal conclusions in the complaint, which, unlike the factual allegations, are "not entitled to the assumption of truth." 556 U.S. at 679. Second, a court must determine whether the factual allegations "plausibly suggest an entitlement to relief." *Id.* at 681. The Court advised that the "plausibility standard is not akin to a probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. It was noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

4

*Rule 56*

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the moving party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 251. Although "a court should not weigh the evidence," *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249), if "a party fails to establish the existence of an element essential to that party's case" or "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper, *id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## III.   Undisputed Material Facts

GTL entered into "Contract DPSCS Q0013001 Inmate Payphone Equipment and Services" (the "Contract") with the State of Maryland, acting through the Maryland Department of Public Safety and Correctional Services ("DPSCS"). Under the Contract,

5

GTL provided inmate phone equipment and services at ECI in 2017, when Plaintiffs allege their calls were unlawfully monitored and recorded. *See generally* Complaint. All non-attorney inmate calls we recorded and monitored under the terms of the Contract at the direction of ECI personnel. **Exh. 1** (Parkhurst Decl.) at ¶ 4.

The DPSC's Inmate Orientation Handbook for ECI inmates in 2017, which was provided to all ECI inmates, contained the following language:

> **T.  Telephone Procedures**
>
> > All telephone calls must be prepaid or collect. **Any telephone call that you make or receive in any State correctional facility may be intercepted, recorded, monitored, or divulged.** The only exception is properly placed telephone calls to or from your attorney.
> >
> > The Inmate Telephone System is supplied by GTL Technologies. Inmate Telephone Dialing Instructions are attached to this Handbook.

*See* **Exh. 2** at 8 (emphasis in original).[1]

At the bank of telephones provided for inmate use at ECI is a sign that reads, in both English and Spanish:  "**NOTICE** ALL PHONE CALLS MAY BE MONITORED AND RECORDED." **Exh. 4** (Parkhurst Decl.) at ¶ 5 (emphasis in original); *see also* **Exh. 5**.

---

[1]     The 2011 version of the ECI Inmate Orientation Handbook had substantively identical language. *See* **Exh. 3**. Exhibits 1 and 2 are self-authenticating under Fed. R. Evid. 902(5) (Official Publications). They are admissible in evidence for the non-hearsay purpose of demonstrating notice to Plaintiffs, Plaintiffs' knowledge, and effect on Plaintiffs. All inmates are to receive a copy of these handbooks within seven days of arrival at a facility and kept at the facility's inmate library. *See* DPSC Executive Directive OPS.001.0008, attached hereto as **Exh. 4**, at ¶ .05B(1) and ¶ .05C(3).

All telephone calls initiated by inmates at ECI through GTL equipment in 2017 had a recording that advised both the caller and the recipient of the call that the call was being recorded and monitored. **Exh. 1** (Parkhurst Decl.) at ¶ 6. Specifically, the recording at the initiation of the call advised the inmate placing the call as follows:

> **This call will be recorded and monitored**.
>
> Press 1 for English.  Marque el numero 2 para Espanol.
>
> To make a collect call, dial 0 plus the area code and number.
>
> To make a debit call, dial 1 plus the area code and number.
>
> * * *
>
> Please enter your 7-digit SID number at the tone:  _____.
>
> Please clearly state your first and last name after the tone:  _____.
>
> Please enter your 4-digit private code after the beep:  _____.
>
> Thank you for using Global Tel*Link, your call is being processed.

*Id.* at ¶ 7 (emphasis added).

The recording also advised the recipient of the call as follows:

> You have a prepaid call.  You will not be charged for this call.  This call is from [inmate's recorded name], an inmate at a Maryland correctional facility.  **This call will be recorded and monitored**.
>
> If you wish to block any future calls of this nature, dial 7 now.
>
> To accept this call, press 0 now.
>
> To decline this call, hang up.

*Id.* at ¶ 8 (emphasis added).

7

If the inmate terminates the call after the recorded advice or if the recipient declines to accept the call after the recorded advice, there is nothing to monitor or record. *Id.* at ¶ 9.

## IV. The Complaint Should be Dismissed Or, In the Alternative, Summary Judgment Should be Granted in Defendants' Favor

Plaintiffs' Complaint should be dismissed under Rule 12(b)(6) for failure to state claims upon which relief can be granted. Alternatively, the undisputed material facts demonstrate that these Defendants are entitled to summary judgment in their favor as a matter of law under Rule 56.

### A. Plaintiffs Consented To The Monitoring Of Their Calls

With the exception of their claim for assault, all of Plaintiffs' claims proceed from the flawed assumptions that their prison telephone calls were private and unmonitored. Neither assumption is warranted. "Prisoners ordinarily have no legitimate expectation of privacy." *Young v. Department of Public Safety & Corr. Svcs.*, No. DKC-14-1493, 2015 WL 3932433, at *5 (D. Md. June 24, 2015) (citations omitted). Moreover, as demonstrated herein, Plaintiffs consented to the monitoring, recording, and divulging of their calls.

The Electronic Communications Privacy Act ("ECPA") generally prohibits the interception of "any wire, oral, or electronic communication," including telephone conversations, in the absence of judicial authorization. 18 U.S.C. §§ 2511(1), 2516; *see also United States v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002); *United States v. Lanoue*, 71 F.3d 966, 980 (1st Cir. 1995); *United States v. Horr*, 963 F.2d 1124, 1125–26 (8th Cir. 1992); *United States v. Willoughby*, 860 F.2d 15, 19 (2d Cir. 1988). Despite that broad prohibition, telephone communications may be intercepted without prior judicial

authorization in two contexts: (1) when the conversation is intercepted "by an investigative law enforcement officer in the ordinary course of his duties," 18 U.S.C. § 2510(5)(a)(ii), and (2) when "one of the parties to the communication has given prior consent to such interception," 18 U.S.C. § 2511(2)(c). *See Hammond*, 286 F.3d at 192; *United States v. Van Poyck*, 77 F.3d 285, 291 (9th Cir. 1996); *Lanoue*, 71 F.3d at 980–81; *United States v. Feekes*, 879 F.2d 1562, 1565 (7th Cir. 1989). Both exceptions apply here.

The law enforcement exception applies to private calls made by inmates that are recorded by a private entity under contract to provide telephone services in correctional institutions. *See United States v. Rivera*, 292 F. Supp.2d 838, 843 (E.D. Va. 2003) ("Verizon's and Global Tel*Link's recording of Rivera's calls pursuant to their contract with Arlington County comes within the law enforcement exception."); *see also* 18 U.S.C. § 2518 ("an interception under this chapter may be conducted in whole or in part by Government personnel, *or by an individual operating under a contract with the Government*, acting under the supervision of an investigative or law enforcement officer authorized to conduct the interception" (emphasis added)); *United States v. Lopez*, 300 F.3d 46, 55 (1st Cir. 2002) (interpreting § 2518 as permitting the government to rely on civilian monitors acting pursuant to contract and subject to government supervision); *Amati v. City of Woodstock*, 176 F.3d 952, 955–56 (7th Cir. 1999) (law enforcement exception applies to detention center's recording of calls to and from police station which captured employees' personal calls); *Van Poyck*, 77 F.3d 285, 291–92 (9th Cir. 1996) (law enforcement exception applies to detention center's recording of telephone calls by inmates); *United States v. Paul*, 614 F.2d 115, 116–17 (6th Cir. 1980) (same); *see also*

*Crooker v. United States Dep't of Justice*, 497 F. Supp. 500, 503–04 (D. Conn. 1980) (distinguishing between inmates' personal calls and inmates' calls to their attorneys).

The consent exception applies when "one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(c); *see also United States v. Acklin*, 72 F. Appx. 26, 27, 2003 WL 21774015, at *1 (4th Cir. Aug. 1, 2003) (applying the consent exception to telephone calls by a prison inmate); *Hammond*, 286 F.3d at 192; *Lanoue*, 71 F.3d at 981; *Feekes*, 879 F.2d at 1565. "[C]onsent may be express or implied in fact from 'surrounding circumstances indicating that the [defendant] knowingly agreed to the surveillance.'" *Van Poyck*, 77 F.3d at 292 (citing *Griggs–Ryan v. Smith*, 904 F.2d 112, 116–17 (1st Cir. 1990)); *see also United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992) (finding that the defendant implicitly consented to monitoring by using the telephone after receiving notice of monitoring); *United States v. Amen*, 831 F.2d 373, 378 (2d Cir. 1987) (same). In the prison context, when the facility has notified an inmate that his telephone calls may be recorded and monitored, the inmate's subsequent use of the telephone implies the requisite statutory consent to the recording and monitoring. *See Hammond*, 286 F.3d at 192 (finding that the defendant consented to the interception of his conversations because he was notified of recording and nonetheless used the telephone); *Willoughby*, 860 F.2d at 19–20 (same); *Amen*, 831 F.2d at 379 (same).

ECI inmates, including Plaintiff Keith A. Washington, were notified that their calls were recorded and monitored in at least three ways. <u>First</u>, ECI inmates were provided an Inmate Orientation Handbook that advises: "**Any telephone call that you make or receive in any State correctional facility may be intercepted, recorded, monitored, or**

**divulged**. The only exception is properly placed telephone calls to or from your attorney." (Emphasis in original.) <u>Second</u>, at the bank of telephones provided for inmate use is a sign that reads, in both English and Spanish: "**NOTICE** ALL PHONE CALLS MAY BE MONITORED AND RECORDED." (Emphasis in original). <u>Third</u>, at the beginning of all inmate-initiated calls, a recording advised the inmate that "This call will be recorded and monitored." Similarly, the recipient of the call was advised by recording that "This call is from [inmate name], an inmate at a Maryland correctional facility. This call will be recorded and monitored."

Mr. Washington, by using the ECI inmate telephone system with the foregoing notice, consented to the monitoring and recording of his calls with his wife. Mrs. Washington, by accepting Mr. Washington's calls from ECI after being advised that the calls would be recorded and monitored, similarly gave her consent. Thus neither had any expectation that their calls were not being monitored and recorded. They were, therefore, owed no duties and suffered no injury from the monitoring or recording of their calls.

Accordingly, Plaintiffs' claims for civil conspiracy, gross and ordinary negligence, violation of the ECPA, breach of contract, intrusion upon seclusion, negligent hiring and retention, vicarious liability, negligent entrustment, intentional infliction of emotional distress, fraud, and violation of Maryland's constitution should be dismissed with prejudice.

### B.   <u>Plaintiffs' ECPA And Assault Claims Are Barred By Limitations</u>

Plaintiffs' claim for violation of the ECPA is barred by that Act's two-year statute of limitations. Similarly, Plaintiff's claim for assault is barred by Maryland's one-year statute of limitations for such claims.

ECPA § 2520(e) states, "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." The purported illegal wiretapping took place on or around June 30, 2017. Plaintiffs were aware of the alleged action as of June 30, 2017. *See* Complaint at ¶¶ 24, 28. Plaintiff Keith Washington even filed a complaint within the Division of Correction shortly thereafter, based on his knowledge of the allegedly illegal wiretapping. *Id.* at ¶ 37. Since Plaintiffs had a reasonable opportunity to discover the alleged violation on the same day that it allegedly took place, and had knowledge of the recording, the allegations in violation of the ECPA are outside of the two-year statute of limitations, as the present matter was not filed until June 26, 2020 at the earliest.[2]

Plaintiffs' claim for assault is subject to a one-year statute of limitations. *See* Md. Code Ann., Courts & Judicial Proceedings § 5-105 ("An action for assault, libel, or slander shall be filed within one year from the date it accrues."). They filed their assault claim on June 26, 2020, almost three years after the alleged June 30, 2017 and July 31, 2017 threats.

Even accepting Plaintiffs' allegations as true, "[a] statute of limitations is a deadline which, after a specified period of time, bars an otherwise valid cause of action." *McKewin v. United States,* No. 92-1770, 1993 WL 389568, at *1 (4th Cir. Oct. 4, 1993) (per curiam). "A court may dismiss a complaint on statute of limitations grounds 'if that time bar is apparent on the face of the complaint.'" *Ott v. Md. Dep't of Pub. Safety & Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th

---

[2]     Plaintiffs did not filed a signed Complaint until October 23, 2020. *See* ECF 7.

Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Because Plaintiffs' claims for violation of the ECPA and assault are outside the applicable statutes of limitation, they should be dismissed with prejudice.

### C.     <u>Plaintiffs' Other Claims Cannot be Sustained</u>

Plaintiffs' remaining claims fail at the most basic level because Plaintiffs: (1) fail to plead the elements of those causes of action; (2) support those claims with purely conclusory allegations; and (c) the non-conclusory facts alleged do not satisfy the elements of the cause of action. Those claims must be dismissed.

#### 1.     <u>Negligence and Gross Negligence</u>

Plaintiffs' claims for common law and gross negligence are deficient in all respects. Both torts require the existence of a duty owed to Plaintiffs. To successfully state a claim for negligence, a plaintiff must allege "(1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Evergreen Assocs., LLC v. Crawford*, 214 Md. App. 179, 186–87 (2013) (citation and internal quotation marks omitted). Gross negligence is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Howard v. Crumlin*, 239 Md. App. 515, 529 (2018) (citation and quotation marks omitted). In the absence of a particular duty owed by Defendants to Plaintiffs, there can be no liability for negligence -- whether regular or gross.

13

Duty, however, is not assumed, but is generally determined by examining a number of factors, to include:

> the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Ashburn v. Anne Arundel County*, 306 Md. 617, 627 (1986), quoting *Tarasoff v. Regents of University of California*, 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d 334, 342 (1976).

Here, no facts are alleged that plausibly give rise to a duty in tort. Plaintiffs allege nothing beyond mere legal conclusions. They assert nothing regarding foreseeability or actual harm. They allege no facts to support that they suffered any damages whatsoever other than conclusional statements regarding stress, mental anguish, emotional distress, and the like. *See, e.g.* Complaint at ¶¶ 73, 78, 106, 139, 145, 152, 157, 164, and 175.

## 2.   Breach of Contract

In Maryland, a complaint alleging breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *RRC Northeast LLC v. BAA Maryland, Inc.*, 413 Md. 638, 655 (2010). Here, Plaintiffs have failed to allege with certainty and definiteness facts showing that GTL agreed with Plaintiffs not to monitor, record, or divulge their telephone conversations made from ECI. Indeed, the only evidence

14

of record completely rebuts the suggestion. Plaintiffs affirmatively agreed -- by their consent -- to have their calls monitored, recorded, and divulged.

### 3.      Intrusion Upon Seclusion

The tort of "intrusion upon seclusion" is a variety of invasion of privacy. *McCauley v. Suls*, 123 Md. App. 179, 190 (1998) (citations omitted). Intrusion upon seclusion has been defined as: "The intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 130 Md. App. 67, 73 (2000). Here, the alleged intrusion was the consensual monitoring and recording of Plaintiffs' telephone calls. Plaintiffs' claim, therefore, is oxymoronic. Plaintiffs had no solitude or seclusion in the telephone calls they consented to have monitored, recorded, and divulged.

### 4.      Negligent Hiring and Retention

"Generally, an employer has a duty 'to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee' regardless of whether one engages an agent or independent contractor." *Perry v. Asphalt & Concrete Servs., Inc.*, 447 Md. 31, 52 (2016) (footnote omitted, quoting *Henley v. Prince George's Cty.,* 305 Md. 320, 336 (1986)). To state a claim for negligent hiring or retention, a plaintiff must allege the following five elements: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries. *See Latty v. St.*

*Joseph's Soc. of the Sacred Heart, Inc.*, 198 Md. App. 254, 272–73 (2011) (citation omitted). Here, Plaintiffs have alleged no facts that would suggest that any of GTL's employees or contractors were not competent or fit, or any facts demonstrating that GTL knew, constructively or otherwise, that they were not competent or fit, or any facts suggesting how GTL was negligent in hiring or retaining them. This absence of pleading is fatal to Plaintiffs' claim.

### 5.   <u>Negligent Entrustment</u>

The elements of negligent entrustment are: "(1) [t]he making available to another a chattel which the supplier (2) knows or should have known the user is likely to use in a manner involving risk of physical harm to others (3) the supplier should expect to be endangered by its use." *Mackey v. Dorsey*, 104 Md. App. 250, 25 (1995). Plaintiffs have alleged none of these elements.

### 6.   <u>Assault</u>

Plaintiffs' claim for assault -- based upon Correctional Officer Richards' alleged statement "You don't know, but I'll get ya," (Complaint at ¶ 29) and threat to have Plaintiff "transferred to another Prison," (*id.* at ¶ 32) and on Ms. Parkhurst's alleged threat to have Plaintiff "Locked up in isolation" (id. at ¶ 39) and statement that she would "have the [Captain] write you a ticket today" (*id.* at ¶ 40) -- do not meet the standards for the tort of assault under Maryland law. In a complaint for assault, the plaintiff must allege that he was intentionally threatened with imminent bodily harm by a defendant with the apparent present ability to carry out that threat. *Cooper v. Harbour Inns of Balt.*, Case No. BEL-98-2174, 2000 WL 351373, at *10 (D. Md. Mar. 20, 2000); *Braun v. Maynard*, Case No. JFM-

09-1897, 2010 WL 1375172, at *6 (D. Md. Mar. 11, 2010) (citing and quoting *Lee v. Pfeifer*, 916 F. Supp. 501 (D. Md. 1996)), *aff'd*, 652 F.3d 557 (4th Cir. 2011).

Even assuming the truth of these allegations at this juncture, it cannot be said that threats to transfer a prisoner to another institution, place a prisoner in isolation, or write up a disciplinary ticket against a prisoner are threats of imminent bodily harm. They merely relate to the lawful conditions of confinement of a lawfully convicted prisoner. Had these threats been carried out, the inmate certainly has access to administrative remedies to challenge the conditions of his confinement. Here, there is no allegation that either Correctional Officer Richards or Ms. Parkhurst had the ability to unilaterally transfer Plaintiff to another facility or to place him in solitary confinement. And a threat to cause an unnamed "Captain" to initiate a "ticket" which could possibly result in inmate discipline sometime in the future (such as isolation or segregation) is far too attenuated to constitute a threat of imminent bodily harm.[3] These allegations do not plausibly arise to an assault.

### 7. **Intentional Infliction of Emotional Distress**

Intentional infliction of emotional distress requires the following elements: "1) the conduct must be intentional or reckless, 2) the conduct must be extreme and outrageous, 3) there must be a causal connection between the wrongful conduct and the emotional distress, and 4) the emotional distress must be severe." *Harris v. Jones*, 281 Md. 560, 566 (1977); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp.2d 462, 465–66 (D. Md. 2002). The tort should

---

[3]     Plaintiffs do not allege that Mr. Washington ever actually was transferred to another institution, placed in segregation or isolation, or written up with a "ticket."

be "used sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Hines v. French*, 157 Md. App. 536, 558 (2004) (quoting *Batson v. Shiflett*, 325 Md. 684, 734–35 (1992)). Such claims are "rarely viable" and, thus, subject to a heightened pleading standard. *Bagwell v. Peninsula Reg'l Med. Ctr.*, 106 Md.  App. 470, 514 (1995). Each of the four elements claim must "be pled ... with specificity." *Foor v. Juvenile Servs. Admin.*, 78 Md. App. 151, 175 (1989).

The requirement that a plaintiff's emotional distress be severe imposes a "high burden." *See Manikhi v. Mass Transit Admin.*, 360 Md. 333, 368 (2000) (collecting cases). "In order for distress to be sufficiently severe to state a claim for IIED, the plaintiff must show that [she] suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Solis v. Prince George's Cnty.*, 153 F. Supp.2d 793, 804 (D. Md. 2001) (quoting *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000)) (internal quotation marks omitted). Plaintiffs have alleged no conduct that comes close to the extremity necessary to sustain this tort and have not alleged a severely disabling emotional response that no reasonable person could expect to endure.

### 8.    Fraud

To  recover damages for fraud, a plaintiff must show by clear and convincing evidence "(1) that the representation made is false; (2) that its falsity was either known to the speaker, or the misrepresentation was made with such a reckless indifference to truth as to be equivalent to actual knowledge; (3) that it was made for the purpose of defrauding the person claiming to be injured thereby; (4) that such person not only relied upon the

18

misrepresentation, but had a right to rely upon it in the full belief of its truth, and that he would not have done the thing from which the injury resulted had not such misrepresentation been made; and (5) that he actually suffered damage directly resulting from such fraudulent misrepresentation." *Martens Chevrolet, Inc. v. Seney*, 292 Md. 328, 333 (1982). "In any event, 'particular facts must be stated' to support an assertion of fraud, and 'no mere allegations ... are sufficient.'" *Juiliano v. Lion's Manor Nursing Home*, 62 Md. App. 145, 154 (1985) (quoting *Wooddy v. Wooddy*, 256 Md. 440, 451 (1970), and *Jenifer v. Kincaid*, 191 Md. 120, 131 (1948)). Here, Plaintiffs have alleged no statements or representations, no falsity, no dates, no intent to induce reliance, no reliance, and no injury flowing from any false statements.

**9.      Violation of Maryland Declaration of Rights**

Plaintiffs' claim for violation of the Maryland Declaration of Rights is unintelligible and, again, consists of conclusions devoid of factual averments. Plaintiffs fail to identify the constitutional "rights, privileges, and immunities" at issue or how they were deprived of them. Thus, they fail to meet the pleading standards set forth by the Supreme Court in *Twombly* and *Iqbal*.

**10.      Civil Conspiracy**

Maryland courts define civil conspiracy as "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385 Md. 1, 24 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221 (1970)) (internal

quotation marks omitted). Maryland does not recognize an independent cause of action for civil conspiracy. *Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 247 F. Supp.2d 773, 777 (D. Md. 2003) (citing *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 340 Md. 176, 189-90 (1995)). Rather, a "defendant's liability for civil conspiracy depends entirely on its liability for a substantive tort." *Id.* (quoting *Fare Deals, Ltd. v. World Choice Travel.Com, Inc.*, 180 F. Supp.2d 678, 692 (D. Md. 2001)) (internal quotation marks omitted). Therefore, because Plaintiffs failed to state a claim for any substantive torts, their claim for civil conspiracy must be dismissed.

### 11.   <u>Vicarious Liability</u>

Vicarious liability is not a cause of action. It is a means by which a principal or employer may be liable for the tortious conduct of its agent or employee. Because Plaintiffs have failed to state a claim for any substantive torts, their claim for vicarious liability must be dismissed.

### V.   <u>Conclusion</u>

For the foregoing reasons, the Complaint against these Defendants should be dismissed or, in the alternative, summary judgment should be granted in favor of these Defendants on all counts of the Complaint.

20

Respectfully submitted,


_____/s/_____ *John A. Bourgeois*_____      _____/s/_____ *Steven K. Fedder*_____
Philip M. Andrews (Bar No. 00078)           Steven K. Fedder (Bar  No. 000873)
John A. Bourgeois (Bar No. 11834)           FEDDER & JANOFSKY LLC
KRAMON & GRAHAM, P.A.                        2650 Quarry Lake Drive, Suite 100
One South Street, Suite 2600                Baltimore, Maryland 21209
Baltimore, Maryland 21202-3201              (410) 415-0080
(410) 752-6030; (410) 539-1269 (fax)        sfedder@mdcounsel.com
pandrews@kg-law.com
jbourgeois@kg-law.com                        Counsel for Defendant Nancy Parkhurst

Counsel for Defendants Global Tel*Link Corp.
and Garth Johnson

21