IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEITH A. WASHINGTON<br>STACEY WASHINGTON, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:20-cv-01932-PX |
| GLOBAL TEL*LINK CORP. *et al.*, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Plaintiffs Keith and Stacey Washington bring this action against Defendants Global Tel*Link Corporation, Garth Johnson, and Nancy Parkhurst arising from Defendants' provision of calling services at the prison where Keith Washington had been incarcerated. ECF No. 7. Presently pending before the Court is Defendants' motion to dismiss or, in the alternative, for summary judgment. ECF No. 31. The motion is fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. The motion, construed as one for summary judgment, is GRANTED.

**I.      Background**

The Court reviews the record evidence in the light most favorable to the Plaintiffs. Keith Washington was an inmate incarcerated at the Eastern Correctional Institution ("ECI"). ECI, through Defendant Global Tel*Link ("GTL"), provided telephone services for all inmates. ECF Nos. 31-2 at 2 and 31-3 at 9, 30. GTL monitored and recorded inmate phone calls per ECI policy, including certain phone conversations between Keith Washington and his wife. ECF Nos. 31-2 at 2-3 and 31-3 at 9. As part of its monitoring policy, ECI expressly notified inmates that their calls would be monitored and recorded. Specifically, the prison Inmate Orientation Handbook alerted inmates that "**[a]ny telephone call that you make or receive in any State**

**correctional facility may be intercepted, recorded, monitored, or divulged**." ECF No. 31-3 at 9 (bold in original). Also, a placard prominently displayed next to the phone bank where inmates placed calls read: "All phone calls may be monitored and recorded." ECF Nos. 31-2 at 2 and 31-6 at 2. Last, whenever a call was placed, the parties were told before conversation could begin that "this call will be recorded and monitored," at which time either party could disconnect the call. ECF No. 31-2 at 3. *See also* ECF No. 34-1 at 7-8.

This matter concerns a single call that Keith Washington placed to his wife, Stacey, on June 30, 2017. ECF No. 7 at 6 ("the June 30 call"). Defendant Nancy Parkhurst, a GTL employee, and ECI Corrections Officer "Richards" listened to the June 30 call, during which the Plaintiffs referred to Parkhurst and Richards as "a bitch." ECF Nos. 7 at 6-7 and 31-1 at 2. Officer Richards, in response, threatened Plaintiffs that she would "get" them. ECF Nos. 7 at 7 and 31-1 at 2. Defendants also "cut off" Washington's phone account and threatened to transfer him to a less-safe prison with the purpose of putting him in harm's way. ECF No. 7 at 7-8; *see also* ECF No. 31-1 at 2. The Washingtons maintain that Defendants' eavesdropping on their call had been "illegal, unethical, and done with actual malice or implied malice." ECF No. 7 at 7.

On June 26, 2020, Plaintiffs filed suit against GTL and fifteen individuals. ECF No. 1; ECF No. 7 (signed copy of original Complaint).[1] Ultimately, Plaintiffs perfected service on GTL, Garth Johnson, and Parkhurst; all other Defendants were dismissed from the suit. ECF No. 18 & 19.

The Complaint asserts thirteen claims arising from the June 30 call: (1) violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511 ("ECPA"); (2) assault; (3) negligence; (4) gross negligence; (5) breach of contract; (6) intrusion upon seclusion; (7)

---

[1] Because Plaintiffs do not have counsel and did not sign their initial Complaint, ECF No. 1, the Court ordered Plaintiffs to re-file the Complaint with signatures. ECF No. 6.

2

intentional infliction of emotional distress; (8) fraud; (9) unspecified violations of the Maryland Constitution; (10) negligent hiring and retention; (11) vicarious liability; (12) negligent entrustment; and (13) civil conspiracy. *See generally* ECF No. 7. Defendants moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment to be granted in their favor under Rule 56. ECF No. 31. For the reasons that follow the motion must be granted.

## II.     Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). Pursuant to Rule 12(d), if "matters outside the pleadings are presented to and not excluded by the court" in connection with a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56," and the parties "must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Defendants urge the Court to consider evidence beyond the four corners of the Complaint that, in their view, conclusively establishes the propriety of granting summary judgment in their favor. In response, the Washingtons do not object to the Court's consideration of such evidence and, in fact, address the significance of the same. ECF No. 34-1 at 6-8 (addressing summary judgment standard and reciting "disputed material facts"). Nor do the Washingtons assert that additional discovery is necessary before this Court may reach the merits of the Defendants' motion. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . (1) defer considering the motion or deny it[.]"). Thus, the Court will treat the motion as one for summary judgment.

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment[.]" *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

### III. Analysis

#### A. Time-Barred Claims

Defendants first argue that the ECPA and assault claims (Counts IV and X) are time-barred. The Court agrees. Limitations is a fact-intensive affirmative defense. *Green v. Pro Football, Inc.*, 31 F. Supp. 3d 714, 721-22 (D. Md. 2014). However, where no factual dispute exists that the claims are time-barred, summary judgment may be granted on limitations grounds.

*Cf. Hooper v. Sachs*, 618 F. Supp. 963, 981 (D. Md. 1985) ("When the undisputed facts and inferences that flow from them lead to only one reasonable conclusion, summary judgment on a limitations issue may be appropriate.").

The ECPA proscribes unauthorized interception of any oral, wire, or electronic communication, 18 U.S.C. § 2511(1)(a); it requires that suit commence within two years from the first reasonable opportunity to discover the violation. 18 U.S.C. § 2520(a) & § 2520(e). It is undisputed that Plaintiffs knew of the alleged ECPA violation as of the June 30 call when Officer Richards confronted Keith Washington about having referred to her as a "bitch." *See* ECF No. 7 at 6-7. However, the Washingtons did not file suit until June 26, 2020, nearly three years later. *See generally* ECF No. 1. Because Plaintiffs did not pursue this claim within the two-year limitations period, it fails as a matter of law.[2]

Similarly, the common law assault claim is time-barred. In Maryland, a civil assault claim must be brought within one year after the action accrues. Md. Code. Ann. Cts. & Jud. Proc. § 5-105; *see also Miles v. DaVita Rx, LLC*, 962 F. Supp. 2d 825, 834 (D. Md. 2013). "A cause of action accrues when the plaintiff knows or reasonably should have known of the facts that constitute the cause of action." *Magnas v. Perlman*, No. 8:20-cv-2862-PWG, 2021 WL 915352, at *3 (D. Md. Mar. 10, 2021) (dismissing assault claim filed three years after incident). Parkhurst allegedly assaulted Keith Washington on July 31, 2017, placing him on notice of the claim. ECF No. 7 at 8, 20-21. Plaintiffs, however, waited until June 2020 to bring this action. Thus, the assault claim also fails as a matter of law. Because no genuine dispute of fact exists as to the untimeliness of these claims, summary judgment is granted in Defendants' favor.

---

[2] The Washingtons apparently argue that Keith Washington's incarceration tolls the deadline by which he must file suit under the ECPA. ECF No. 34-1 at 10-12. But the fact of incarceration alone cannot trigger equitable tolling. *See Diaz v. Bishop*, No. PX-19-2212, 2021 WL 1265228, at *3 (D. Md. Apr. 6, 2021).

### B. Negligence and Gross Negligence (Counts II & III)

The Court turns next to the negligence and gross negligence counts. To sustain a negligence claim, a plaintiff must demonstrate that Defendants owed them a duty of care that they breached, causing damages. *See Jacques v. First Nat'l Bank*, 307 Md. 527, 531 (1986); *see also Horridge v. Saint Mary's Cty. Dep't of Soc. Servs.*, 382 Md. 170, 182 (2004). Gross negligence amounts to "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Cooper v. Rodriguez*, 443 Md. 680, 708 (2015) (quoting *Barbre v. Pope*, 402 Md. 157, 187 (2007)). Gross negligence, therefore, necessarily depends on a finding of ordinary negligence. *See Cooper*, 443 Md. at 708; *Stracke v. Estate of Butler*, 465 Md. 407, 421 (2019).

Both the negligence and gross negligence claims rest on the premise that the June 30 call was "private," and that Defendants maintained a "duty" to keep their call "private." *See* ECF No. 7 at 10-11. But when viewing the undisputed evidence most favorably to the Washingtons, the call was never private. Nor did the Defendants assume any duty to keep the call private. Rather, the opposite was true—Defendants recorded all prison calls and warned the inmates and their callers before they started talking that their calls would be monitored, recorded, and "divulged." *See* ECF Nos. 31-2 at 2-3; 31-3 at 9; 31-6 at 2. On these facts, no reasonable juror could conclude that Defendants were negligent or grossly negligent in their monitoring of the call or in sharing the content of the call with an ECI Corrections Officer. Summary judgment is granted in Defendants' favor.

### C. Breach of Contract (Count V)

Next, as to the breach of contract claim, the Washingtons aver that GTL breached the "Terms and Conditions and Privacy Policy[.]" ECF No. 7 at 15-17. However, nothing in the record supports that GTL ever agreed to keep inmate calls private. *Cf. Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (plaintiff must adduce evidence of the existence of an agreement). The Washingtons concede that no express agreement existed between them and GTL. *See* ECF No. 7 at 16. Instead, they argue that an GTL maintained an "implied agreement" that it "would not divulge contents of Plaintiff(s) private phone calls[.]" ECF No. 7 at 16. But nothing supports this contention. Indeed, once again, the undisputed facts show the opposite—that GTL expressly informed all inmates it was recording and monitoring all inmate phone calls. When viewing these facts most favorably to Plaintiffs, no reasonable juror could conclude that GTL impliedly promised to keep those same calls "private" from the very personnel tasked with monitoring the conversations. Summary judgment is likewise granted as to this claim.

### D. Intrusion Upon Seclusion (Count VI)

Intrusion upon seclusion is the "intentional intrusion upon the solitude or seclusion of another or his private affairs or concerns that would be highly offensive to a reasonable person." *Furman v. Sheppard*, 130 Md. App. 67, 73 (2000) (citing Restatement (Second) of Torts § 652B (Am. Law. Inst. 1977)). To survive challenge, some evidence must demonstrate that Defendants had invaded the Washingtons' "reasonable expectation of privacy." *See Norris v. PNC Bank, N.A.*, No. ELH-20-3315, 2022 WL 2193303, at *32 (D. Md. June 16, 2022) (quoting *Furman*, 130 Md. App. at 73). It is well established that a plaintiff's consent to the claimed invasion is a defense to the supposed intrusion. *Id.*

Viewing the undisputed facts most favorably to the Plaintiffs, they had no reasonable

expectation of privacy in the June 30 call because they were plainly and repeatedly forewarned that all calls placed from the prison are monitored and recorded by the prison. ECF Nos. 31-2 at 2-3; 31-3 at 9; 31-6 at 2. The Washingtons nonetheless chose to converse. Accordingly, no dispute exists that Plaintiffs impliedly consented to the monitoring of the call such that they cannot now claim their privacy had been invaded. *Cf. U.S. v. Hammond*, 286 F.3d 189, 192 (4th Cir. 2002); *U.S. v. Acklin*, 72 Fed. App'x 26, 27 (4th Cir. 2003); *U.S. v. Rivera*, 292 F. Supp. 2d 838, 844 (E.D. Va. 2003) ("[The inmate] plainly consented to the recording and monitoring of his telephone calls at both facilities because he used the telephone after receiving notice that his calls would be recorded and/or monitored."). Summary judgment is granted in Defendants' favor.

### E. Intentional Infliction of Emotional Distress (Count XI)

Next, as to the claim of intentional infliction of emotional distress (IIED), the claim survives only when evidence demonstrates that Defendants' extreme and outrageous acts caused the plaintiff severe emotional distress. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001). The claim covers only "opprobrious behavior that includes truly outrageous conduct." *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted). To sustain an IIED claim, Plaintiffs also must demonstrate that they "suffered a *severely* disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000) (internal quotation marks and citations omitted). As a result, courts routinely reject claims based on "conclusory statements of emotional distress" as lacking in proof of a demonstrably severe injury. *Karn v. PTS of Am., LLC*, No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

The Washingtons have adduced no evidence that Defendants conducted themselves in a manner so shocking, extreme, or outrageous as to satisfy an IIED claim. Crediting that Defendant Parkhurst disclosed to an ECI officer the content of the call, leading to threats to "get" Keith Washington by securing his transfer to another prison, this threat alone is not so outrageous or extreme to support the claim. Alternatively, no evidence suggests that Plaintiffs suffered the kind of emotional distress sufficient to trigger IIED protection. Thus, summary judgment in Defendants' favor is warranted.

### F. Fraud (Count XII)

On the fraud claim, Plaintiffs must generate some evidence that Defendants made a false statement, with knowledge of the statement's falsity, for the purpose of defrauding the Plaintiffs, and that Plaintiffs relied on the false statement to their detriment. *See James v. Weisheit*, 279 Md. 41, 44 (1977); *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 415 (D. Md. 2018). The Washingtons, however, have not pleaded any such false statements or representations, and nothing in the record suggests otherwise. Rather, the parties agree that GTL truthfully warned all callers that the inmate-placed calls would be monitored and recorded. Without evidence that Defendants made a materially false statement, the claim necessarily fails.

### G. Maryland Declaration of Rights (Count XIII)

The Washingtons aver that Defendants' conduct violated the Maryland Declaration of Rights. ECF No. 7 at 23-24. They identify of a grab-bag of constitutional rights "including but not limited to Articles 2, 3, 19, 24, and 26[.]" ECF No. 7 at 23. But the Washingtons adduce no facts that support any constitutional violations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Accordingly, Defendants' motion is granted as to these claims.

### H. Negligent Hiring and Retention, Vicarious Liability, and Negligent Entrustment (Counts VII, VIII, & IX)

The Complaint next alleges violations of negligent hiring and retention, vicarious liability, and negligent entrustment, stemming from GTL's employment relationship with other named Defendants. ECF No. 7 at 18-20. The Complaint avers generally that "GTL codified power, positions, authority, legal rights, and privledges [sic] to all Defendants in their capacity as employees[,]" and that GTL negligently permitted them to eavesdrop "illegally" on private conversations. ECF No. 7 at 19-20.

Defendants rightly contend that all claims fail because no facts establish that "any of GTL's employees or contractors were not competent or fit[.]" ECF No. 31-1 at 16. Any claim sounding in negligent hiring or supervision, at a minimum, must establish that that employees in question were not competently performing their relevant job duties. *See McGuiness v. Brink's Inc.*, 60 F. Supp. 2d 496, 501 (D. Md. 1999); *see also Latty v. St. Joseph's Soc. of the Sacred Heart, Inc.*, 198 Md. App. 254, 272-73 (2011). Given that indisputably GTL employees were supposed to monitor and record inmate conversations on behalf of ECI, no reasonable juror could conclude that GTL employees were derelict in their job duties regarding the June 30 call. Summary judgment is therefore granted in Defendants' favor on these claims as well.[3]

### I. Civil Conspiracy (Count I)

Last, the Court turns to the civil conspiracy claim. A civil conspiracy is "a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff." *Hoffman v. Stamper*, 385

---

[3]Count VIII, the "vicarious liability" claim, is "not really a claim at all." *See McCullough v. Liberty Heights Health & Rehabilitation Center*, 830 F. Supp. 2d. 94, 97 (D. Md. 2011). It is instead a theory of liability, and so the Court will not treat it as an independent claim capable of resolution on the merits.

Md. 1, 24 (2005) (quoting *Green v. Wash. Sub. San. Comm'n*, 259 Md. 206, 221 (1970)). Relevant here, civil conspiracy "is not a distinct tort that can sustain an award of damages in the absence of an underlying tort." *Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554, at *6 (Mar. 11, 2011); *see also Hoffman*, 385 Md. at 25 (citing *Alleco Inc. v. Harry & Jeanete Weinberg Foundation, Inc.*, 340 Md. 176, 189 (1995)). Where no underlying tort survives challenge, then the civil conspiracy claim must necessarily fail. *See Arkansas Nursing Home Acquisition, LLC v. CFG Community Bank*, 460 F. Supp. 3d 621, 647-48 (D. Md. 2000). Because none of the Washingtons' tort claims survive challenge, summary judgment must be granted on the conspiracy claim as well.

### IV.     Conclusion

At bottom, and when viewing the record most favorably to the Washingtons, two claims are time-barred, and the remainder cannot survive on the merits because Defendants were permitted to monitor and record inmate phone calls placed at ECI. Thus, summary judgment must be granted in Defendants' favor. ECF No. 31. A separate Order follows.

8/24/2022                                                                                /s/
Date                                                                                     Paula Xinis
                                                                                         United States District Judge